UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THOMAS H. MARSDEN                    :
                                     :
         v.                          :          C.A. No. 08-132A
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of the Social Security  :
Administration                       :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on April 11, 2008 seeking to reverse the decision of the Commissioner.  On December 17, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 11).  On January 29, 2009, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 14).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for

an Order Affirming the Decision of the Commissioner (Document No. 14) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 11) be DENIED.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on August 2, 2001, alleging disability as of March 6, 2001.   (Tr. 73-76).   The application was denied initially (Tr. 26, 28-31) and on reconsideration.  (Tr. 27, 33-36).  Plaintiff filed a request for an administrative hearing which was held on January 20, 2004 before Administrative Law Judge Martha H. Bower (the "ALJ") at which Plaintiff, represented by counsel, a medical expert ("ME") and a vocational expert ("VE") appeared and testified.  (Tr. 492-528).  On May 24, 2004, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 14-25, 607-618).  The Appeals Council denied Plaintiff's request for review on October 18, 2005.  (Tr. 6-8).  A timely appeal was then filed with this Court in late 2005.  Marsden v. Barnhart, C.A. No. 05-524A.  ("Marsden I").

In Marsden I, the Commissioner responded to Plaintiff's Motion to Reverse by filing a Motion for Voluntary Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g).  (Tr. 624).  On August 18, 2006, the Court granted the Commissioner's Motion and remanded Plaintiff's case to the Commissioner for further administrative proceedings.  (Tr. 624-627).  On September 20, 2006, the Appeals Council vacated the final decision of the Commissioner and instructed the ALJ to hold a new administrative hearing and conduct further administrative proceedings.  (Tr. 631-635).  While his original request for review of the ALJ's May 24, 2004 decision was pending before the Appeals Council, Plaintiff filed new disability applications on June 28, 2004.  (Tr. 572, 877).  Those applications were denied initially (Tr. 560, 567-569) and upon reconsideration.  (Tr. 561, 563-565), and Plaintiff requested an administrative hearing.  (Tr. 562).  Those disability applications were

pending at the administrative level when this Court remanded Marsden I for further administrative proceedings. (Tr. 887-893). Consequently, the Appeals Council ordered that the ALJ, upon remand, consolidate the pending applications. (Tr. 635).

On October 30, 2006, the ALJ held a hearing, at which time Plaintiff, represented by counsel, an ME and a VE appeared and testified. (Tr. 894-946). On November 20, 2006, the ALJ issued a second consolidated decision again concluding that Plaintiff was not disabled. (Tr. 535-549). That became the final decision of the Commissioner on February 23, 2008 when the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 529-532). Plaintiff then filed a second timely appeal with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to comply with the Order of the Appeals Council regarding the evaluation of the ME's opinion. Plaintiff also argues that the ALJ placed insufficient weight on the treating and examining source opinions.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ properly considered the medical source opinions of record. The Commissioner also asserts that there is substantial evidence in the record to support the ALJ's decision to deny benefits.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a

claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.     Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human

Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by

counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained

counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty,

947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir.

1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's

medical sources do not give sufficient medical evidence about an impairment to determine whether

the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.

1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a

consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human

Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.      The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§

404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or

combination of impairments which significantly limit her physical or mental ability to do basic work

activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do

not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this

burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.      Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

-11-

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty-five years old at the time of the 2006 ALJ hearing (Tr. 74), who received his GED (Tr. 601) and worked as a machinist, truck driver, loader, laborer and most recently as a delivery truck driver.  (Tr. 83, 93, 591).  Plaintiff alleges disability due to herniated discs in his back, pain and depression.  (Tr. 92, 577, 597).

On December 6, 2001, Dr. Stephen R. Fish, a Disability Determination Services ("DDS") Physician, opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for about six hours in an eight-hour workday; push/pull with no limitations; occasionally climb, balance, stoop, kneel, crouch and crawl; and be exposed to extreme cold and hazards on a less than concentrated basis.  (Tr. 218-219, 221).

On July 31, 2002, Dr. Edward R. Hanna, a DDS Physician, opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and walk for three to four hours at a slow pace in an eight-hour workday; sit about six hours in an eight-hour workday; push/pull on a

limited basis with the lower extremities; occasionally climb, balance, stoop, kneel, crouch and crawl; and be exposed to extreme cold and hazards on a less than concentrated basis.  (Tr. 239-240, 242).

On November 6, 2003, Dr. Frederick Harrington, a Neurosurgeon, opined that Plaintiff suffered from back pain that resulted in severe symptoms, which prevented him from sustaining competitive employment on a full-time, ongoing basis.  (Tr. 366-367).

On November 10, 2003, at the request of Plaintiff's counsel, Dr. John P. Parsons, a Psychologist, evaluated Plaintiff (Tr. 407-417) and diagnosed him with a disabling major depressive disorder.  (Tr. 414-415).  Dr. Parsons opined that Plaintiff's condition resulted in no impairment as to his ability to maintain personal habits; a moderate degree of impairment as to his ability to relate to other people, perform simple and repetitive tasks and understand, carry out, and remember instructions; and a moderately severe degree of impairment as to his ability to perform daily activities, maintain interests, perform complex and varied tasks and respond appropriately to coworkers, supervision, and customary work pressures.  (Tr. 416-417).

On November 11, 2003, Dr. Kenneth Sperber, Plaintiff's primary care physician, opined that Plaintiff suffered from degenerative disc disease that resulted in moderate back pain, which prevented him from sustaining competitive employment on a full-time, ongoing basis.  (Tr. 402-404, 694-696).

On November 16, 2004, Dr. Gary Brissette, a DDS Physician, opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for about six hours in an eight-hour workday; push/pull without limitation; and frequently climb, balance, stoop, kneel, crouch and crawl.  (Tr. 644-645).

On January 19, 2005, Dr. Sperber opined that Plaintiff suffered from degenerative disc disease that resulted in moderate and episodically severe back pain, which prevented him from sustaining competitive employment on a full-time, ongoing basis.  (Tr. 421-422, 777-778).

On February 25, 2005, Dr. Malavalli Gopal, a DDS Physician, opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for about six hours in an eight-hour workday; push/pull without limitation; occasionally climb, balance, stoop, kneel, crouch and crawl; and reach on a limited basis.  (Tr. 793-795).

On March 22, 2005, Dr. Wendy Schwartz performed a consultative psychological evaluation of Plaintiff (Tr. 800-805) and diagnosed him with a depressive disorder, impulse disorder, rule/out anxiety disorder and history of attention deficit disorder.  (Tr. 804).  Dr. Schwartz opined that Plaintiff had no significant impairment with understanding and following directions; a mild impairment in maintaining interests; a moderate impairment in social interaction; and a moderate to severe impairment in his ability to maintain personal interests and respond appropriately to customary work pressures, colleagues and supervisors.  (Tr. 805).

On April 11, 2005, Dr. E. Lynch, a DDS Psychologist, opined that, due to affective, anxiety, and personality disorders, Plaintiff had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of extended duration. (Ex. 6F). Dr. Lynch also opined that Plaintiff could relate appropriately in a work setting and maintain persistence, pace and concentration for two-hour periods over an eight-hour workday with breaks, but that pacing would be slowed when performing complex tasks.  (Tr. 791).

-14-

On May 15, 2005, Dr. Viadisiav Zayas, a Neurologist, opined that Plaintiff suffered from attention deficit disorder that resulted in a mildly poor memory which prevented him from performing work that required a good memory.  (Tr. 479-480, 816-817).

On May 25, 2005, at the request of Plaintiff's counsel, Dr. James P. Curran, a Psychologist, evaluated Plaintiff (Tr. 481-486, 818-823) and diagnosed him with major depressive disorder, generalized anxiety disorder and attention deficit disorder.  (Tr. 484, 821).  Dr. Curran opined that Plaintiff had a moderate degree of impairment in his ability to relate to other people; maintain personal habits; respond appropriately to coworkers, supervision and customary work pressures; and perform simple, repetitive, complex and varied tasks.  (Tr. 485-486, 822-823).  Dr. Curran further opined that Plaintiff had a moderately severe degree of impairment in his ability to perform daily activities; maintain interests; and understand, carry out and remember instructions.  (Tr. 485, 822).

On June 25, 2006, Dr. Sperber opined that Plaintiff suffered from back pain and degenerative disc disease that resulted in severe symptoms, which prevented him from sustaining competitive employment on a full-time, ongoing basis.  (Tr. 844-846).

On June 28, 2006, Dr. James K. Sullivan opined that Plaintiff had a mild impairment in his ability to maintain personal habits and perform simple tasks; a moderate impairment in his ability to relate to other people and respond appropriately to coworkers and supervision; and a moderately severe impairment in his ability to perform daily activities, maintain interests, respond to customary work pressures, perform repetitive, complex and varied tasks and understand, carry out and remember instructions.  (Tr. 867-868).

**A.**     **The ALJ Did Not Violate the Appeals Council Remand Order**

Plaintiff's first claimed error is that the "ALJ failed to comply with the Order of the Appeals Council regarding the evaluation of the medical expert's opinion." (Document No. 11 at p. 14).   A review of the history of this case is necessary to put Plaintiff's argument in context.

In 2004, the ALJ found that Plaintiff's back problems and depression limited him to a range of sedentary work limited by exertional restrictions related to Plaintiff's back impairments and nonexertional restrictions related to his depression. (Tr. 24).   Based on this RFC and testimony from the VE, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other work existing in significant numbers and thus he was not entitled to DIB.  (Tr. 23, 25).

Plaintiff appealed, and the Commissioner agreed to a voluntary remand which this Court ordered.   On September 20, 2006, the Appeals Council vacated the 2004 decision and remanded to the ALJ for a second hearing.  (Tr. 633-635).   The ALJ was directed to perform several tasks on remand including "obtain[ing] updated treatment records," "further evaluat[ing] the claimant's mental impairment in accordance with...20 C.F.R. 404.1520a," and "obtain[ing] evidence from a medical expert to clarify the nature and severity of the claimant's impairment."  (Tr. 634).

On October 30, 2006, the ALJ convened a second hearing at which she accepted more current medical records (Tr. 897) and heard testimony from Plaintiff, an ME and a VE.  (Tr. 894-946).   On November 20, 2006, the ALJ issued her second decision denying benefits to Plaintiff.  Due to Plaintiff's back impairments, depression and anger control problems, the ALJ found he was limited to a range of light work which

> does not require repetitive bending, squatting or crouching; does not require crawling, kneeling or stooping; does not require repetitive climbing; does not require exposure to unprotected heights or dangerous machinery; does not require concentrated exposure to extremes of temperatures or humidity; can accommodate a limitation in concentration, persistence and pace secondary to pain/perceived

> pain such that he can understand, remember and carry out simple 1-2-3 step tasks over an 8 hour day with appropriate breaks approximately every 2 hours; a limitation in social interactions requiring an object or material focused job that entails minimal work-related interactions with co-workers and the public; and an inability to operate foot controls repetitively.

(Tr. 541).  The ALJ again concluded, based on this RFC and testimony from the VE, that Plaintiff was capable of making a successful adjustment to other work existing in significant numbers and thus he was not entitled to DIB or SSI.  (Tr. 549).

Plaintiff primarily faults the ALJ for failing to specifically evaluate the testimony of Dr. Fuchs.  Dr. Fuchs was the testifying ME at the 2004 ALJ hearing.  He did not testify at the 2006 ALJ hearing.  Dr. Kaplan testified as an ME at the 2006 hearing, and his testimony was appropriately evaluated and relied upon by the ALJ.  (Tr. 547).  There is simply nothing in the Appeals Council Remand Order that required the ALJ to reconsider Dr. Fuchs' testimony.  (Tr. 633-635).  In fact, the Order simply tasked the ALJ to "obtain" updated treatment records and "obtain" evidence from an ME to clarify the nature and severity of Plaintiff's impairment.  (Tr. 634).  The ALJ did so.

Plaintiff ignores that the Appeals Council itself reviewed the ALJ's 2006 decision and found it to be "in compliance with the remand order."  (Tr. 529).  Further, after the ALJ's first decision, Plaintiff filed a successive application for DIB and SSI which was consolidated with the original case.  (Tr. 635).  In particular, the ALJ was instructed to "associate the claim files and issue a new decision on the associated claims."  Id.  (emphasis added).  Again, the ALJ did so.

Thus, Plaintiff's focus on the terms of the Appeals Council Remand Order is misplaced.  The subject of this appeal must necessarily be whether the ALJ's 2006 decision is legally sound and supported by substantial evidence. The ALJ's 2006 decision is a "new" decision regarding Plaintiff's

"old" and "new" applications based on a broader record including testimony from "new" medical and vocational experts who had the benefit of reviewing a more longitudinal evidentiary record.

Plaintiff has shown no legal error in the ALJ's 2006 non-disability decision and, because her findings are supported by substantial evidence, they are entitled to deference. Dr. Kaplan reviewed Plaintiff's medical records (physical and psychological) and testified that Plaintiff's back disorder did not meet a listing (Tr. 920) and, as noted by the ALJ, indicated that he observed from the medical records that "several physicians, including Dr. Greenblatt, [a Neurosurgeon], found that the pathology seen on his tests did not present a clear explanation for his numerous complaints." (Tr. 547; see also Tr. 213, 916). Plaintiff faults the ALJ for failing to mention in her decision either Dr. Fuchs' or Dr. Kaplan's testimony regarding the combined effects of Plaintiff's physical and mental impairments. While Plaintiff is correct as to Dr. Fuchs' testimony, his statement is inaccurate as to Dr. Kaplan's testimony. The ALJ does mention Dr. Kaplan's testimony in her decision. In particular, she notes that "Dr. Kaplan acknowledged that [Plaintiff's] stress level could affect his [pain] complaints to some degree" and that "Dr. Kaplan opined that overall; he did not see evidence of any impairment or combination of impairments which rose to the level of severity of any impairment found in the listing of impairments." (Tr. 547 – emphasis added). Dr. Kaplan reviewed records regarding both Plaintiff's physical and mental impairments. The bottom line is that, contrary to Plaintiff's argument, the ALJ did consider, and mention in her decision, Dr. Kaplan's testimony as to whether the combination of Plaintiff's impairments met a listing.

Plaintiff also argues that "the ALJ failed to comply with the order of the Appeals Council with regard to [his] mental impairments." (Document No. 11 at p. 18). The ALJ concluded that Plaintiff's depression and anger control problems were "severe" impairments within the meaning

-19-

of 20 C.F.R. §§ 404.1520(c) and 416.920(c).  At Step 3, the ALJ accurately noted that, as to Plaintiff's "depression/anger, he has been in treatment only sporadically, does not consistently take medication for this impairment, and has not demonstrated severely limited functioning in the broad areas of daily activities, socialization, concentration and attention, and with no evidence of decompensation." (Tr. 541).

Plaintiff contends that the ALJ's findings in this regard were not sufficiently detailed to satisfy the "special technique" required by 20 C.F.R. § 416.920a. Pursuant to the technique, the ALJ must determine whether or not Plaintiff's impairments are "severe" by rating the functional limitation which results from the impairment(s) in four specific areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 416.920a(c)(3)-(4), (d). While the ALJ should normally follow a mandatory regulatory review procedure, several courts in this Circuit have found that the failure to explicitly follow the prescribed technique is "harmless error" if the record otherwise supports the ALJ's conclusion and a remand would not "change, alter or impact the result." See, e.g., Arruda v. Barnhart, 314 F. Supp. 2d 52, 79-81 (D. Mass. 2004). See also Querido v. Barnhart, 344 F. Supp. 2d 236, 250-54 (D. Mass. 2004). Because of efficiency concerns, this Court sees no benefit in a meaningless remand and agrees with and adopts the standard articulated above, which reviews whether remand would change, alter or impact the result. See Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005) (failure to follow a required regulatory review process requires remand but only when the record contains a "colorable claim" of mental impairment).

While the ALJ did not specifically rate Plaintiff's functioning on the "five point scale" set forth in 20 C.F.R. § 416.920a(c)(4), she accorded "significant probative value" to Exhibit CR 12 (Tr.

547) which consists of Dr. Lynch's 2005 Psychiatric Review Technique form.  In that evaluation,

Dr. Lynch applied the "five point scale" and assessed mild limitations in activities of daily living

and maintaining social functioning, moderate limitations in maintaining concentration, persistence

or pace and no episodes of decompensation.  (Tr. 786).  This evaluation is consistent with and

supports the ALJ's RFC assessment.  In particular, the ALJ imposed a limitation as to concentration,

persistence and pace "secondary to pain/perceived pain" and a limitation on social interactions.  (Tr.

541).  The bottom line is that the ALJ properly weighed and evaluated the evidence regarding

Plaintiff's mental impairments, and there is substantial evidence in the record to support her Step

3 finding and RFC assessment.  Accordingly, any failure by the ALJ to specifically document her

application of the "special technique" would, at most, be harmless error.

### B.    The ALJ Properly Evaluated the Medical Opinions of Record

Plaintiff's second claimed error is that the ALJ assigned insufficient weight to the opinions

of certain treating and examining sources.  The ALJ indicated that "nearly every treating and

examining source has characterized both [Plaintiff's] pain, and the degree of impairment from his

mental complaints as being 'moderate' in nature, although several physicians (primarily those hired

by counsel) have then indicated that [Plaintiff] is moderately severely limited in a variety of areas."

(Tr. 547).  This inconsistency lead the ALJ to give limited probative value to the opinions rendered

by such sources.  Id.

Plaintiff takes issue with the ALJ's statement that "nearly every treating and examining

source" characterized his pain and functional limitations as moderate.  (Document No. 11 at p. 17).

Plaintiff argues that the ALJ's reasoning is flawed because Dr. Sperber and Dr. Harrington, on

occasion, rated the severity of his impairments as greater than moderate.  (See Tr. 366, 402, 777,

844).  However, the ALJ never said that <u>all</u> of the treating and examining sources rated Plaintiff's

symptoms as moderate.  She said that "nearly every" such source had done so.  (Tr. 547).  Thus, the

premise of Plaintiff's argument is false.  By using the term "nearly every," the ALJ acknowledged

that some of the medical opinions assessed greater than moderate symptoms.  The ALJ weighed

competing medical opinions and, since her RFC assessment has medical support in the record, it is

entitled to deference.  <u>See</u> <u>Rodriguez-Pagan v. Sec'y of HHS</u>, 819 F.2d 1, 4 (1st Cir. 1987) ("it is the

[ALJ's] province to resolve conflicts in the medical evidence").  The ALJ also found that the

assessments indicating moderately severe limitations were inconsistent with Plaintiff's "reports of

activities and capabilities as given in various sources in the record" (Tr. 547) – a finding not

challenged by Plaintiff in this appeal.

Finally, Plaintiff argues that the ALJ gave no specific reasons for rejecting the opinions of

Dr. Schwartz and Dr. Sullivan who opined that Plaintiff would have a moderately severe limitation

in the ability to respond to customary work pressures.  (<u>See</u> Tr. 805, 868).  Plaintiff's argument is

unsupported.  First, the ALJ clearly considered these opinions as she discussed the underlying

reports in detail in her decision.  (Tr. 544-545).  Second, although the ALJ did so in general terms,

she explained the reasons why she was limiting the probative value given to opinions such as those

of Dr. Schwartz and Dr. Sullivan.  (Tr. 547).  She also identified the assessments to which she gave

"significant probative value" and the reasons why, <u>i.e.</u>, "they are all based upon the objective

findings in the record and their findings are all internally consistent with each other."  <u>Id.</u>  Plaintiff

has shown no error in the ALJ's consideration of this expansive record and, since her findings

therefrom are supported by substantial evidence of record, they are entitled to deference.

## VI.   CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 14) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 11) be DENIED.  Final judgment shall enter in favor of the Commissioner.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 17, 2009